## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**JAMES HENDERSON,**

**Plaintiff,**

**v.**

**ROBERT WILKIE, Secretary of the United States Department of Veterans Affairs,**

**Defendant**.

Case No. 18 cv 04685

Judge Mary M. Rowland

## MEMORANDUM OPINION & ORDER

Plaintiff James Henderson ("Henderson") brings this lawsuit against Defendant Robert Wilkie in his capacity as Secretary of the United States Department of Veterans Affairs, alleging race and age discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16(c) and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. Before this Court is Defendant's motion for summary judgment. (Dkt. 23.) For the reasons stated below, Defendant's motion is granted.

## LOCAL RULE 56.1

As a preliminary matter, Defendant argues that Henderson has not complied with Local Rule 56.1, which requires, among other things, that the party opposing summary judgment provide (1) a response to each paragraph in the moving party's statement, including, in the case of any disagreement, specific citations to the record and (2) a separate statement of any additional facts that require denial of summary

1

judgment with specific citations to the record. The Court agrees that Plaintiff's Response to Defendant's Rule 56.1(1)(3) Statement of Facts and Plaintiff's Local Rule 56.1(b)(3) Statement of Additional Facts violate Rule 56.1. (*See* Dkt. 32.) Several of Henderson's responses to Defendant's statement of facts purport to dispute all or part of the matters asserted without citing to evidence that tends to contradict the facts asserted. Furthermore, many of the statements in Henderson's statement of additional facts either lack evidentiary support or mischaracterize the record. Due to these shortcomings, the Court deems some of Defendant's facts admitted[1] and only relies on those facts that are supported by the cited record reference,[2] disregarding others.[3]

---

[1] The Court deems admitted some or all of the facts in paragraphs 10, 12, and 15 of Defendant's statement of facts as Henderson's response disputes the entirety of the statement but provides evidence that only contradicts a part of the statement. While Defendant asks this Court to deem admitted or disregard several more of Plaintiffs' responses, the Court declines to do so because either the facts are more or less properly disputed (paragraphs 6, 33, 35, 37, and 38) or they are immaterial to resolving the present motion (paragraphs 5 and 18).

[2] The Court disregards some of the facts in paragraphs 20 and 35 of Henderson's statement of facts for lack of evidentiary support. Although Defendant asks this Court to disregard several additional facts for lack of evidentiary support, the Court declines to do so because either the challenged facts are immaterial to resolving the present motion (paragraphs 2, 9, 11-13, 15-17, 25, and 26) or they are insufficient to overcome summary judgment even if considered (paragraphs 1, 22-24, 27-34, and 36).

[3] Defendant requests the Court to disregard several of Henderson's exhibits because they were not timely disclosed during discovery in violation of Federal Rule of Civil Procedure 37(c)(1) and because they violate Federal Rule of Evidence 403. The Court declines because even if this Court considers these exhibits on their merits, they are insufficient to overcome summary judgment.

## BACKGROUND

This lawsuit arises from a vacancy in March 2017 for a criminal investigator position at the Hines Veteran's Affairs Hospital (the "Hospital") (Dkt. 32 at ¶¶7-8.) Plaintiff James Henderson, a 63-year old[4] African American detective at the Hospital, applied for the position. (*Id.* at ¶¶1-2; 8-9; Dkt. 40 at ¶1.) Henderson has been working at the Hospital since 1986 and has held various positions over the years including patrol officer, sergeant, lieutenant, and captain. (Dkt. 32 at ¶2.) He has been working under the supervision of Chief Gary Marsh since Marsh became police chief in March 2013. (*Id.* at ¶¶3; 9.) Marsh was responsible for deciding who would be promoted to the criminal investigator position.

The Hospital's human resources department reviewed the applications and identified seven candidates who were qualified for the criminal investigator position, one of which was Henderson. (*Id.* at ¶¶8-9.) Each candidate also received an experience level certification. (*Id.* at ¶10.) One of the candidates, Eric Ousley, received a GS-11 level certification, while the rest, including Henderson, received a GS-9 level certification. (*Id.*) Henderson contends that he should have been certified at the GS-11 level. (*Id.*).

Chief Marsh organized a three-member panel to interview the candidates for the criminal investigator position. (*Id.* at ¶13.) The panelists were (1) Percy

---

[4] The court agrees with Defendant that Henderson's statement of facts claiming that he is 63 years old lacks evidentiary support based on the provided record reference. (*See* Dkt. 32 at ¶1.) However, because Defendant does not argue that Henderson has failed to make out a *prima facie* case of age discrimination, this Court accepts Plaintiff's assertion that Henderson is 63 years old. *See Henderson v. Shulkin,* 720 F. Appx. 776, 778 (7th Cir. 2017) (noting at that time this plaintiff was a 59-year old male).

3

Henderson, captain and training officer at the Hospital and Plaintiff's biological brother; (2) Michael Unthank, deputy chief of police at the James A. Lovell Health Care Center in North Chicago, Illinois; and (3) Curtis Tharpe, captain at the Jesse Brown Veteran's Affairs Medical Center. (*Id.* at ¶¶13; 30.) The panel interviewed the candidates[5] on May 5, 2017 and scored each candidate on a five-point scale based on their answers to the same six questions. (*Id.* at ¶¶14-15; 17.) Henderson received the lowest combined score of all the candidates. (*Id.* at 21.) Chief Marsh awarded the criminal investigator position to the highest scoring candidate, Joseph Ellena ("Ellena"), and testified that he based his selection on the scores awarded by the interview panel. (*Id.* at ¶33.) Ellena is Caucasian and was under 40 at the time of promotion[6]. (Dkt. 40 at ¶20.)

Henderson filed an administrative Equal Employment Opportunity complaint challenging his non-selection on the bases of age, race, and retaliation. (Dkt. 32 at ¶42.) Henderson had previously filed two administrative complaints—one in 2013 against the previous police chief alleging discrimination and retaliation due to a demotion, and a second in 2014 against Chief Marsh alleging discrimination and retaliation due to his failure to be promoted to criminal investigator. (Dkt. 40 at ¶¶6;18.) The Veteran's Affairs Office of Employment Discrimination found no merit

---

[5] One of the applicants dropped out from the process prior to interviewees, so the panelists conducted a total of six interviews. (Dkt. 32 at ¶14.)

[6] Although Plaintiff does not provide the Court with evidence of Ellena's age, the Court presumes he is under 40 because Defendant does not argue that Henderson has failed to make a *prima facie* case of age discrimination.

in Henderson's third complaint and he filed the present action on July 8, 2018.[7] (Dkt. 32 at ¶42.)

## LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986). After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). "It is not the duty of the court to scour the record

---

[7] Henderson filed lawsuits against the Secretary of Veteran's Affairs based on both administrative complaints. The first challenged Chief Marsh's failure to promote Henderson to criminal investigator in 2014. *Henderson v. Wilkie,* 15-cv-4445. The district court granted summary judgment, and the Seventh Circuit reversed on the race discrimination claim because the agency "offered shifting explanations for why Marsh chose [the applicant], because Marsh could not have relied upon the voided panel selection process, because Marsh gave [the applicant] a noncompetitive appointment instead of posting the vacancy again, and because Marsh has a history of discriminatory conduct." *Henderson v. Shulkin,* 720 F. App'x. 776, 783 (7th Cir. 2017). Henderson did not appeal his age discrimination or retaliation claims. *Id.* at 778. The race discrimination claim was recently tried to a jury. *Henderson v. Wilkie,* No. 15 C 4445, 2019 WL 356804 (N.D. Ill. Jan. 29, 2019) (denying Plaintiff's motion for new trial). Plaintiff's second case challenged the previous police chief's decision to demote Henderson in 2013. *Henderson v. Shulkin,* No. 17-cv-4465, 2020 WL 1062335 (N.D. Ill. Mar. 5, 2020) (granting summary judgment on age and race discrimination and hostile work environment and denying summary judgment on the claim of retaliation).

in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence on which he relies." *Harney v. Speedway SuperAmerica*, LLC, 526 F.3d 1099, 1104 (7th Cir. 2008). Construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## ANALYSIS

In assessing summary judgment in an employment discrimination case, it is well-settled that the applicable standard is "whether the evidence would permit a reasonable fact finder to conclude that the plaintiff's race," or protected activity "caused the … adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *David v. Bd. of Trustees of Comm. College Dist. No. 508,* 846 F.3d 216, 224 (7th Cir. 2017).

For federal employees, as opposed to those employed in the private sector, the Supreme Court recently significantly relaxed the standard required for an action brought under 29 U.S.C. § 633a(a) of the ADEA and determined that "[t]he plain meaning of the critical statutory language ('made free from any discrimination based on age') demands that personnel actions be *untainted by any consideration* of age."

6

*Babb v. Wilkie*, 140 S. Ct.1168, 1171 (2020) (quoting 29 U.S.C. § 633a(a)) (emphasis added).[8] However, it must be noted that the *Babb* Court also observed that while this more liberal standard could lead to liability under the statute, such evidence (that age was a consideration) "does not mean that a plaintiff may obtain all forms of relief that are generally available for a violation of § 633a(a), including hiring, reinstatement, backpay, and compensatory damages, without showing that the personnel action would have been different if age had not been taken into account. To obtain such relief, a plaintiff must show that age was the but-for cause of the challenged employment decision. But if age discrimination played a lesser part in the decision, other remedies may be appropriate." *Id.*

With these lessons in mind, the Court turns to Henderson's case. First as to the race and retaliation claims, a plaintiff may utilize the *McDonnel Douglas* "burden-shifting framework" to make this evidentiary showing. *David,* 846 F.3d at 224. Henderson has chosen this approach in this case. Under *McDonnel Douglas*, the plaintiff must first establish a *prima facie* case of discrimination by showing: (1) he is a member of a protected class, or for a retaliation claim, that he engaged in protected activity; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorable. *McDaniel v. Progress Rail*

---

[8] Because *Babb v. Wilkie* was decided after the parties briefed summary judgment, the court permitted supplemental briefing. [Dkt. 49-52]. The Court agrees with Henderson that federal employees no longer need to establish but-for causation to establish liability under the ADEA, but finds that *Babb* has little impact on this case since this case is not focused on the burden but is concerned with whether the VA's legitimate non-discriminatory reason was pretextual.

*Locomotive, Inc.*, 940 F.3d 360, 370 (7th Cir. 2019); *Metzger v. Illinois State Police*, 519 F.3d 677, 681 (7th Cir. 2008). Once the plaintiff has established a *prima facie* case, "the burden shifts to defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *McDaniel*, 940 F.3d at 368 (internal quotations and citation omitted). Even if the plaintiff choses to proceed with the *McDonnel Douglas* framework, the Court must still "assess the evidence as a whole" under *Ortiz* to decide whether a reasonable jury could find that the plaintiff suffered adverse employment action because of his race, age, or in retaliation for engaging in protected activity. *Id.* (internal quotations and citation omitted).

Starting with the *McDonnell Douglas* framework, the Defendant does not contest that Henderson establishes a *prime facie* case of discrimination or retaliation. (Dkt. 56 at 9) ("Without conceding that Henderson can establish a *prime facie* case, this motion can be decided entirely on the last step in the summary judgment protocol—the VA has demonstrated a … legitimate non-discriminatory reason for Henderson's non-selection".) Rather, the parties dispute whether Defendant's explanation for Henderson's non-selection is pretextual. According to Defendant, Henderson was not selected because he received the lowest score of all the candidates during the panel interview. Chief Marsh testified that he based his selection decision on the interview scores and awarded the criminal investigator position to the highest

scoring candidate, Ellena. (Dkt. 32 at ¶33.) Henderson makes several arguments that Marsh's rationale is a pretext for discrimination and retaliation.

First, Henderson argues that Marsh's selection rationale is pretextual because during prior personnel decisions that utilized panel interviews, Marsh relied on criteria other than the panel interview scores. There are several problems with this argument. Primarily, there is no evidence in *this* case that Marsh relied on anything other than the panel interview scores. Henderson cites to Marsh's testimony from Henderson's previous litigation, *Henderson v, Wilkie,* 15-cv-4445, wherein Marsh testified that he would hire a GS-11 candidate over any GS-9 candidate for the criminal investigator position. (*See* Dkt. 40 at ¶24; PX26). In the instant case, Marsh selected Ellena, a GS-9 candidate, over Ousely, a GS-11. Because this contradicts what Marsh said he would do with respect to a position posted 4 years earlier, Henderson argues the VA's explanation in this case is pretextual. Henderson bolsters this assertion with declarations of other Hospital employees alleging other instances in which Marsh disregarded interview scores and promoted younger, white employees over older, black employees. (Dkt. 40 at ¶¶29.)

Accepting all these assertions in the light most favorable to Henderson, "separate promotion process[es]—'with different facts, individuals, and job announcements at issue—cannot serve as record evidence'" of pretext in the present instance. *Johnson v. McDonald,* No. 15-CV-11092, 2020 WL 374679, at *12 (N.D. Ill. Jan 23, 2020) (quoting *Rowe v. Shulkin*, No. 17-CV-9258, 2019 WL 2060951, at *11 (N.D. Ill. May 9, 2019)). While "[o]ne can reasonably infer pretext from an employer's

shifting or inconsistent explanations for the challenged employment decision," *Henderson v. Shulkin*, 720 F. App'x 776, 783 (7th Cir. 2017), the court does not believe that if an employer's criteria for a position changes over a four-year period it is a reason to infer discriminatory intent.

Moreover, this argument does not get Henderson very far since he too was classified as a GS-9. He disputes this classification and contends he had the requisite experience to qualify for a GS-11 certification. He claims human resources mistakenly assigned him a GS-9 certification. Assuming that is true, Henderson does not explain how his classification as a GS-11 would have resulted in him receiving the promotion. It is significant and *undisputed* that Henderson received the lowest score from the panel—a panel of which his brother was a member. Even his brother gave Henderson the second lowest score of six (6) the interviewed. (Dkt. 32 at ¶27.)

Next, Henderson asserts that Marsh's reliance on the interview scores was pretextual because one of the panelists, Unthank, stated that the interviews were not designed to determine the most qualified applicant for the position. (Dkt. 40 at ¶23.) But even if Unthank's *opinion* is correct, that means Marsh's reliance on the interview scores was an unwise business decision, not a discriminatory one. *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1310 (7th Cir. 1997) ("The fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual."); *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("We do not sit as a super-personnel department that reexamines an entity's business decision and reviews the

propriety of the decision. Our only concern is whether the legitimate reason provided by the employer is in fact the true one."). Moreover, Henderson does not argue that the scores themselves were invalid such that reliance on them would be illegitimate. *See Henderson*, 720 F. App'x at 782 (finding evidence of pretext where, unlike here, VA gave shifting explanations for its promotion decision and posting had expired thereby rendering the selection panel ranking void).[9]

Henderson further argues that the panel interview process violated the Hospital's merit promotion policy, which directs eight "sources of information" be considered when hiring/promoting to the extent they relate to the relevant job position: (1) resume; (2) appraisals; (3) supplemental qualifications statement; (4) education; (5) awards; (6) training; (7) outside activities; (8) other tools: interviews, work samples, written tests, etc. (PX 40); *see Baines v. Walgreen Co.*, 863 F.3d 656, 664 (7th Cir. 2017) (personnel decisions that deviate from organizational policy or standard procedure may give rise to an inference of pretext). But as this court in *Rowe v. Shulkin* noted while considering the same policy:

> [T]he policy does not mandate that each panelist must consider and rate each of the eight sources separately. Instead, the policy requires only that the panelist consider each source to the extent the applicant provides information related to that source. … Nor must the panelists consider each source separately; the policy, as an example, suggests that a reviewer might properly

---

[9] Henderson's only challenge to the "process" is that Ellena was permitted to interview remotely via telephone, while the other applicants appeared in person. (Dkt. 40 at ¶20.) To the extent Henderson argues that this is evidence of disparate treatment during the interview process, that argument is not compelling. First, Ellena interviewed remotely because he was on leave at the time of the interviews, not because he was young, white or had not engaged in protected activity. (*See* DX 2 at ¶19.) Second, Henderson does not articulate how a remote interview was an advantage. Most would argue that appearing in person was an advantage over interviewing telephonically.

follow the policy by considering an applicant's experience, resume, supervisory evaluation, education, training, and "other" relevant information.

2019 WL 2060951 at *15. In the present case, the evidence illustrates that the various factors outlined in the merit promotion policy were considered throughout the interview process. Henderson's application materials, which were reviewed by human resources, included a copy of his resume and information about his education, background, experience, and training. (DX 11.) Furthermore, the first question the panel asked all candidates was to summarize their relevant experience, training, and background. (Dkt. 32 at ¶16.) Thus, applicants were invited to provide members of the selection panel information about at least four of the eight topics outlined in the merit promotion policy. So while Marsh relied on the interview scores to make his decision, inherent in those scores was a consideration of relevant merit promotion policy factors.

Finally, Henderson argues that he was clearly a more qualified candidate than Ellena— so much so that a reasonable jury could infer pretext from his non-selection. But "evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1180 (7th Cir. 2002) (internal quotations omitted)). To make such a showing, Henderson asserts that Ellena had no investigatory experience. (Dkt. 40 at ¶20.) However, the record cites Henderson relies on do not support his assertion. Instead, the evidence establishes that Ellena did have investigatory experience. (*See* PX 19 at

50) ("He [Ellena] would have been conducting investigations as a supervisor of a shift, plus also training new police officers on how to properly conduct investigations.").

Henderson next cites to an incident from 2009 in which Ellena and other Hospital officers allegedly falsified a police report, arguing that this clearly disqualified Ellena for the promotion. First, this incident occurred prior to Chief Marsh's arrival at the Hospital and did not result in disciplinary action. Second, one disciplinary incident from eight (8) years ago does not disqualify Ellena from being considered for a promotion to a criminal investigator position in 2017. *See Scott v. Wilkie,* No. 18-C-11, 2020 WL 1701881, at *4 (N.D. Ill. Apr. 8, 2020) (rejecting identical argument made by different Hospital employee with respect to the same allegations of falsifying records on grounds that the event occurred prior to Marsh's arrival and several years before the promotion decision at issue, and even if officer had "falsified records, that does not demonstrate that [plaintiff] was more qualified.") Moreover, even if Ellena were disqualified, that would not have affected Henderson's non-selection because five other candidates scored higher than him. *See Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) (noting that even if selectee were disqualified due to his lack of qualifications, that would not change the outcome because plaintiff was not the next-highest scoring candidate).

Finally, Henderson cites to various discriminatory statements allegedly made by Marsh over the years, but either the record citations do not provide support for these assertions or the statements do not pertain to Henderson's non-selection for the 2017 criminal investigator position. (*See* Dkt. 40 at ¶¶28; 34-35.) Such "remarks

unrelated to the employment decision may not overcome summary judgment if they stand alone as evidence of the employer's discriminatory intent." *Huff v. UARCO, Inc.*, 122 F.3d 374, 385 (7th Cir. 1997).

Nothing about the selection process or promotion outcome in the present case suggests discriminatory or retaliatory motive. Absent such evidence, the Court cannot conclude that Marsh's past discriminatory statements, while improper in any context and least of all a workplace serving our Veterans, made independently of this process render it suspect.

In *Johnson v. McDonald*, 2020 WL 374679, at *14, the plaintiff challenged the VA's failure to promote him to sergeant. The decision-maker, the same Chief Marsh, used an identical selection process to the one at issue: applications were reviewed to narrow the pool to seven candidates, who were then interviewed by a panel. *Id* at *6. Marsh based his selection on the highest scoring candidates from the panel interviews. *Id.* In finding that plaintiff had failed to establish that Marsh's selection rationale was a pretext for discrimination and retaliation based on many of the same arguments made by Henderson, the *Johnson* court also found that plaintiff failed to meet the *Ortiz* test:

> Finally, this claim fails the gestalt test outlined in *Ortiz*—simply put, there is not enough evidence here that a reasonable jury could find that Plaintiff was not promoted because of an illicit reason. ... Although Marsh, the decisionmaker, had a history of questionable statements and potentially discriminatory behavior, the sergeant promotion followed normal procedures, and the scores placing Plaintiff third were not made by Marsh. To the contrary, the scores were given by people who have no documented history of animus and did not know of Plaintiff's history of protected activity. That is, there is no evidence of a causal connection between Plaintiff's race, age, or protected activity and his non-selection.

14

*Id.* at *14. *see also Rowe*, 2019 WL 2060951 (summary judgment granted for government where Marsh utilized interview panel process absent of procedural irregularities); *Paoli v. Wilkie*, No. 16-CV-11072, 2018 WL 4635643 at *4-*5 (finding no evidence of bias where Marsh utilized an interview panel process identical to that at issue and awarded the position to the highest-scoring interviewee).[10]

As in *Johnson*, the panelists—not Marsh—ranked Henderson as the lowest scoring candidate and Henderson does not argue that the panelists discriminated against him[11] or, that the interview process was suspect. The evidence indicates that Marsh relied on these scores, rather than on *any* considerations of race or protected activity in making his selection decision for the criminal investigator position.

As for the recent Supreme Court decision regarding the ADEA, the evidence in this case indicates that the decision was made "untainted by any consideration of age." *Babb,* 140 S. Ct. at 1171. Defendant's motion for summary judgment is granted.

---

[10] In *Borja v. Shulkin* and *Johnson v. McDonald*, the courts found evidence of discriminatory and retaliatory intent because of procedural irregularities in the hiring process. No. 17-cv-2340, 2018 WL 6725565 (N.D. Ill. Dec. 21, 2018); 2020 WL 374679, at *9-*11. In both instances, although an interview panel was used, Chief Marsh posted the same position multiple times without explanation. *Id.*; *see also Paoli*, 2018 WL 4635643, at *5 (finding evidence of retaliatory intent where Marsh selected top-scoring interviewee and then listed another vacancy for the same position rather than selecting Plaintiff, the second-highest scoring candidate for the first vacancy). This case is distinguishable because of the "clean" procedure used and because Mr. Henderson (even with his brother on the panel) received the lowest number of points of all the applicants.

[11] There is evidence in the record to suggest that Henderson believes that panelists Unthank and Tharpe may have discriminated against him (*see* Dkt. 32 at ¶¶39-41), but because Henderson does not develop that argument (*see* Dkt. 30), the Court declines to consider it.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is granted.

E N T E R:

Dated: May 14, 2020

_____
MARY M. ROWLAND
United States District Judge